**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HAROLD MOSLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:24-cv-01580-MTS |
| | ) | |
| THE CITY OF ST. LOUIS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Before this Court is Plaintiff Harold Mosley's ("Plaintiff") Motion for Sanctions against all Defendants for failure to preserve electronically stored information ("ESI") under Federal Rule of Civil Procedure 37(e)(1) and (2). Doc. [56]. Plaintiff claims that Defendants failed to preserve security footage of Plaintiff's cell during a beating by a fellow inmate. Doc. [57] at 3–14. Plaintiff seeks (1) an adverse inference instruction permitting the jury to presume that the destroyed ESI was unfavorable to Defendants; (2) a prohibition on testimony about the contents of the destroyed ESI; and (3) a prohibition on use of evidence derived from the destroyed ESI for any purpose. *Id.* at 14. Because Plaintiff meets all requirements for sanctions against all Defendants, this Court will grant the Motion.

**I. Statement of Facts**

Plaintiff Harold Mosley claims that on July 15, 2017, a fellow inmate at the St. Louis City Justice Center ("CJC") beat him and left him unconscious in his cell for hours. Doc. [57] at 1; Doc. [88] ¶¶ 95–96. Within days of the beating, Mosley's counsel contacted Commissioner of Corrections Dale Glass, demanding that the City of St. Louis preserve all surveillance videos of the incident. Doc. [57-1] at 5. Glass received the letter and forwarded

it to Records Retention Supervisor Jamie Lambing. Doc. [57-4] 52:22–24, 53:11–17, 56:17–24. The CJC surveillance system automatically deletes footage after sixty days unless an employee affirmatively saves the footage in a "vault," so Correctional Investigator Avianne Strong found and saved relevant security footage. Doc. [57-2] 80:13–19; Doc. [57-3] 98:23–99:22.

This was Strong's first case, and she was unfamiliar with the security surveillance system. Doc. [57-3] 97:13–23. Therefore, Strong only saved about two hours' worth of footage from July 15. *Id.* 114:7–21. Strong claims that she lost the rest of the footage in a "system malfunction," but the City's corporate representative claims that Strong lost the footage due to an "inadvertent, accidental oversight." *Id.* 117:10–19; Doc. [57-2] 113:12. Lambing checked Strong's work, and despite having a usual policy of watching every requested video, Lambing did not watch the entire video to verify that it was complete. Doc. [57-5] 32:10–12, 33:10–14, 41:3–8. Thus, after sixty days the security system automatically destroyed the remaining surveillance video. Doc. [57-2] 80:13–19.

## II. Legal Standard

Federal Rule of Civil Procedure 37(e) allows a court to issue sanctions "[i]f [ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." The rule has two subparts. Rule 37(e)(1) applies when the failure to preserve results in prejudice to the opposing party, in which case the Court can impose sanctions "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Rule 37(e)(2), by contrast, allows for an adverse jury instruction, dismissal, or default judgment if

the Court finds that the party being sanctioned "acted with the intent to deprive another party of the information's use in the litigation." This Court analyzes each subsection separately.

## III. Discussion

A. Plaintiff is entitled to sanctions under Federal Rule of Civil Procedure 37(e)(1) due to Defendants' failure to preserve security footage of his cell.

As a threshold matter, Plaintiff must establish that (1) Defendants had a duty to preserve ESI, in this case the security footage of his cell, (2) Defendants did not take reasonable steps to preserve the footage, and (3) the footage cannot be "restored or replaced." *LifeScience Techs., LLC v. Mercy Health*, 4:21-cv-1279-SEP, 2025 WL 961721, at *2 (E.D. Mo. Mar. 31, 2025). Plaintiff must then establish that this failure resulted in prejudice to him. *Id.*

i. Defendants had a duty to preserve video footage from Plaintiff's cell.

A party has a duty to preserve ESI "when litigation is reasonably foreseeable." Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendment; *see also LifeScience Techs., LLC*, 2025 WL 961721, at *2. Here, Plaintiff's counsel contacted Commissioner Dale Glass on July 21, 2017, and demanded that surveillance video be preserved. Doc. [57-1] at 5. Glass received the letter and forwarded it to Jamie Lambing, and then Avianne Strong examined and saved the recorded footage. Doc. [57-3] 98:23–99:22; Doc. [57-4] 52:22–24, 53:11–17, 56:17–23. Therefore, Defendants were on notice of their duty to preserve all surveillance videos requested.

ii. Defendants did not take reasonable steps to preserve the surveillance footage.

Strong and Lambing did not act reasonably in saving the recorded footage. By Strong's own admission, this was her first case, and she was unfamiliar with the video system. Doc. [57-3] 97:13–23. Strong recorded about two hours of relevant footage, but no more. *Id.* 114:7–

21. Lambing, meanwhile, testified in her deposition that she watched requested videos as a matter of policy, but she did not watch the entire video in this case. Doc. [57-5] 32:10–12, 33:10–14, 41:3–8. Lambing also never checked the file size of the video and failed to notice that Strong only saved two hours' worth of footage. *Id.* 28:2–16. By the City and Defendant Jones's own admission, Strong, Lambing, and Glass committed "mistakes that could . . . be considered negligence." Doc. [67] at 3.

iii. The surveillance footage cannot be "restored or replaced."

The CJC retains security footage for sixty days. Doc. [57-2] 80:13–19. If the footage is not saved, it is gone forever. *Id.* Therefore, there is no way to restore or replace the footage at issue.

iv. Failure to preserve the surveillance footage prejudiced Plaintiff.

When ESI has been destroyed, prejudice exists "if the lost or missing evidence would be different or more helpful to the party claiming spoliation than the evidence already in existence." *Sandoval v. Dustar Express, Inc.*, 0:24-cv-2601-SGE, 2026 WL 880396, at *11 (D. Minn. Mar. 31, 2026) (quoting *N. Am. Sci. Assocs., LLC v. Conforti*, 0:24-cv-0287-ECW, 2024 WL 4903753, at *15 (D. Minn. Nov. 27, 2024)); *see also Swindle v. Christy*, 5:20-cv-6013-GAF, 2021 WL 5297047, at *4 (W.D. Mo. Mar. 4, 2021). Plaintiff need not prove that the evidence would have been a "smoking-gun." *Stevenson v. Union Pac. R. Co.*, 354 F.3d 739, 748 (8th Cir. 2004). In fact, sometimes prejudice can be found based solely on the "nature of the evidence destroyed." *Id.*

The facts of this case bear a strong resemblance to the U.S. Court of Appeals for the Eighth Circuit precedent of *Stevenson*. In *Stevenson*, a Union Pacific train hit the plaintiffs' car as they crossed the street, and after the accident Union Pacific recorded conversations

between the train crew and dispatch. 354 F.3d at 742–43. When Union Pacific later destroyed the recording pursuant to its document retention policy, the Eighth Circuit upheld a finding of prejudice because the recording was the only evidence of "conversations between the engineer and dispatch contemporaneous with the accident." *Id.* at 743, 748. Similarly, in this case the Court is unaware of any other video or audio evidence of Mosley's cell on July 15, 2017, other than the destroyed recording. Therefore, under *Stevenson*, Plaintiff has shown prejudice.

Defendants argue that loss of the video is also prejudicial to them, as the video could have vindicated Defendants' claims that they followed their standard monitoring procedures. Doc. [67] at 3. However, other courts in this Circuit have found that the mere allegation that destroyed evidence *could* prejudice both parties is not sufficient to warrant denial of sanctions. *See Sandoval*, 2026 WL 880396, at *11 n.13.

Since Defendants did not take reasonable steps to preserve video footage from Plaintiff's cell, that footage cannot be restored or replaced, and that failure prejudiced Plaintiff, Plaintiff is entitled to sanctions "necessary to cure the prejudice" imposed on him. Fed. R. Civ. P. 37(e)(1).[1]

---

[1] Plaintiff does not allege that Defendants Jones or Powell were involved in destroying the footage. *See generally* Doc. [57]. District courts in the Second and Sixth Circuits have addressed the issue of whether courts can impute spoliation sanctions from a correctional department to an officer defendant, and they employ a "special relationship" test with six factors: "(1) who employed the officer defendant; (2) who trained the officer defendant; (3) who represented the officer defendant; (4) who controls the evidence introduced in the officer defendant's favor; (5) whether the third-party indemnifies the officer defendant; and (6) whether a settlement is subject to approval by the third-party." *Henry v. Mihm*, 827 F. Supp. 3d 1002, 1012 (E.D. Mich. 2026) (quoting *Castro v. Smith*, 0:16-cv-8147-JGLC, 2023 WL 5371311, at *6 (S.D.N.Y. Aug. 22, 2023)). Courts in this Circuit have imputed spoliation sanctions using similar factors. *See Vogt v. MEnD Corr. Care, PLLC*, 0:21-cv-1055-TNL, 2023 WL 2414551, at *14 (D. Minn. Jan. 30, 2023); *accord Mays v. Schroeder*, 0:24-cv-1736-ECW, 2026 WL 1328599, at *5–*6 (D. Minn. May 13, 2026). Defendants Jones and Powell meet several of these factors. The City of St. Louis employed (and presumably also trained) both Jones and Powell, and attorney Erin McGowan represents all three Defendants. Doc. [18] ¶¶ 4–5; Doc. [76] ¶ 4; Doc. [73] at 1; Doc. [81] at 1; Doc. [84] ¶ 5. Therefore, given the undeniable prejudice to Plaintiff from his inability to access and use the lost evidence, as well as this Court's "broad discretion to craft proper sanctions for spoliated evidence," the Court believes it proper to impose sanctions on all Defendants. *See Human v. Fisher Invs., Inc.*, 351 F.R.D. 225, 237 (E.D. Mo. 2026) (quoting *Adkins v. Wolever*, 554 F.3d 650, 651 (6th Cir. 2009) (en banc)).

B. Plaintiff is also entitled to sanctions under Rule 37(e)(2) because the circumstantial evidence supports an inference of intent to destroy on the part of Defendants.

If a party to litigation destroys information "with the intent to deprive another party of the information's use," Federal Rule of Civil Procedure 37(e)(2) allows a court to "instruct the jury that it may or must presume the information was unfavorable to the party." An adverse jury instruction is a grave sanction, as it essentially "brands one party as a bad actor." *Lincoln Composites, Inc. v. Firetrace USA, LLC*, 825 F.3d 453, 463 (8th Cir. 2016) (quoting *Hallmark Cards, Inc. v. Murley*, 703 F.3d 456, 461 (8th Cir. 2013)). In cases involving "a routine document retention policy," a plaintiff must show that the defendants "inten[ded] to destroy the evidence for the purpose of obstructing or suppressing the truth." *Stevenson*, 354 F.3d at 747. Since "[i]ntent rarely is proved by direct evidence," courts have "substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Morris v. Union Pac. R.R.*, 373 F.3d 896, 901 (8th Cir. 2004).

Here, this Court believes that such a grave sanction is warranted. In reaching this conclusion, the Court is guided not only by *Stevenson* and other Eighth Circuit precedents but also by analogous cases in this District. For example, in *Taylor v. Null*, a similar case involving destruction of prison surveillance footage pursuant to a routine policy, Judge Shirley Padmore Mensah found intent to destroy when (1) the footage in question was the "only contemporaneous recording" of the incident; (2) the defendants had "general knowledge" of the importance of the footage; and (3) the footage was destroyed after the plaintiff "specifically requested" that it be preserved. 4:17-cv-0231-SPM, 2019 WL 4673426, at *6 (E.D. Mo. Sep. 25, 2019). The same facts exist here. The destroyed footage is the only known recording of

Plaintiff's cell, the Defendants were on notice of the footage's importance, and Plaintiff's counsel specifically requested that the footage be preserved.

Additional facts further the inference that Defendants intentionally destroyed the footage. First, Defendants cannot agree on why Strong did not save the footage. The City's corporate representative, Edward Roth, claimed that her failure was an "inadvertent, accidental oversight," but Strong herself said that she lost the footage because of a "system malfunction," which neither she nor the City has substantiated. Doc. [57-2] 113:12; Doc. [57-3] 117:10–19.

Second, new discovery in this case suggests a potential motive to destroy the footage. In Commissioner Glass's deposition in this case, he admitted under oath that Defendants Jones and Powell violated jail policy by not logging any security rounds on July 15, 2017, and that without such log entries there is no way to know whether they followed their duty to conduct the rounds. Doc. [113-1] 49:9–50:19, 51:24–52:10. But as Plaintiff notes, "[t]he video was the only way to know." Doc. [113] at 7. Given the already suspicious circumstances of the video's destruction, it is reasonable to infer that Strong and Lambing intentionally destroyed the video to protect Jones and Powell because Jones and Powell were not conducting their security rounds and the video would have shown that.[2]

From this Court's consideration of the "circumstantial evidence, witness credibility, motives of the witnesses [], and other factors," the Court finds that Plaintiff has made the

---

[2] The Court is comfortable imputing the actions of Strong and Lambing to Defendant the City of St. Louis. Several other courts in this Circuit have "impute[d] the destruction of evidence to parties who did not personally cause the spoliation under an agency theory." *N. Am. Sci. Assocs., LLC*, 2024 WL 4903753, at *17; *see also Danielson v. Huether*, 4:18-cv-4039-RAL, 2021 WL 217706, at *6 n.7 (D.S.D. Jan. 21, 2021) ("Courts ordinarily analyze the attribution of fault to one party for another's spoliation under principles of agency."), *aff'd*, No. 21-1556, 2022 WL 259455 (8th Cir. Jan. 28, 2022) (per curiam); *Am. Builders & Contractors Supply Co. v. Roofers Mart, Inc.*, 1:11-cv-0019-CEJ, 2012 WL 2992627, at *6 (E.D. Mo. July 20, 2012) ("The Court agrees that general agency principals [sic] apply in determining whether to impose sanctions against a party for spoliation by its employees.").

requisite showing of intent to destroy to warrant an adverse inference instruction under Rule 37(e)(2). *Morris*, 373 F.3d at 901.

The only remaining question for the Court is the severity of the sanction. There are "three types of adverse inference instructions[.] In its most harsh form . . . a jury can be instructed that certain facts are deemed admitted and must be accepted as true. At the next level . . . a court may impose a mandatory presumption, . . . [and the] least-harsh instruction permits (but does not require) a jury to presume that the lost evidence is both relevant and favorable to the innocent party." *Taylor*, 2019 WL 4673426, at *7 (quoting *Hall v. Ramsey Cnty.*, 0:12-cv-1915-LIB, 2013 WL 12141435, at *3 (D. Minn. Apr. 8, 2013)). Here, Plaintiff requests the least severe sanction, an "instruction permitting the jury to presume the destroyed surveillance footage was unfavorable to Defendants." Doc. [57] at 14. The Court finds that such a permissive sanction is reasonable under the circumstances.

## IV. Conclusion

Plaintiff has shown that he is entitled to sanctions under Rule 37(e)(1) because Glass and the City of St. Louis failed to take reasonable steps to preserve surveillance footage of Plaintiff's cell, and Plaintiff was prejudiced as a result. Additionally, Plaintiff has shown that he is entitled to sanctions under Rule 37(e)(2) because the circumstantial evidence supports an inference that Strong and Lambing intentionally destroyed the surveillance footage.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Sanctions, Doc. [56], is **GRANTED**.

**IT IS FURTHER ORDERED** that, as a discovery sanction under Rule 37(e)(1), all Defendants are prohibited from testifying about the contents of the destroyed surveillance footage of Plaintiff's cell on July 15, 2017, or anything observed from said footage.

**IT IS FURTHER ORDERED** that, as a discovery sanction under Rule 37(e)(1), all Defendants are prohibited from using any evidence derived from the destroyed surveillance footage of Plaintiff's cell on July 15, 2017, for any purpose.

**IT IS FINALLY ORDERED** that, as a discovery sanction under Rule 37(e)(2), should this case proceed to trial, the Court will provide an instruction permitting the jury to presume that the destroyed surveillance footage was relevant and unfavorable to Defendants.

Dated this 25th day of November 2026.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE